IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELANIE WILSON, | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| EASTON AREA SCHOOL DISTRICT, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## COMPLAINT

Plaintiff Melanie Wilson ("Ms. Wilson"), by her attorneys, Broughal & DeVito, L.L.P., brings this Complaint against Defendant Easton Area School District ("EASD").

## NATURE OF ACTION

1.      This is an action raising discrimination and racial harassment based on race and color under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq*. ("PHRA").

2.      In keeping with EASD's history of discriminatory and racist conduct toward Black teachers, administrators, coaches and staff, Ms. Wilson was subjected to a barrage of racist and discriminatory conduct including ignoring her pleas for safety while at work for Defendant EASD her being constructively terminated because she is African American and Black.  Her claims arise from that discriminatory and racist conduct.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Ms. Wilson's claims arise under federal law.

4.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Ms. Wilson's state-law PHRA claims because they arise from the same events as Ms. Wilson's federal claims.

5.     This Court is a proper venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because Defendant resides in this district for venue purposes and a substantial part of the events giving rise to this cause of action occurred in this district.

## **PROCEDURAL PREREQUISITES**

6.     Ms. Wilson dual-filed a Charge of Discrimination, No. 530-2024-03591, with the United States Equal Opportunity Employment Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on February 7, 2024.

7.     On March 11, 2024, the EEOC issued Ms. Wilson a Determination and Notice of Rights; this action is filed within ninety (90) days of that Notice.

## **FACTS**

8.     Ms. Wilson is a Black, African American female who resides at 24 B Tenby Way Lancaster, PA 17601

9.     Defendant EASD is a Pennsylvania school district centrally located in Easton, Pennsylvania with a business address of 1801 Bushkill Drive, Easton, Pennsylvania 18040.

10.     Ms. Wilson worked as a teacher for EASD since she was hired in August 1999.

11.     Throughout her 24-year career at Respondent EASD, Charging Party Wilson has been subjected to a continuous barrage of discriminatory and harassing conduct because of her race and color.

12.     Ms. Wilson applied for and was denied a position as a head coach for Respondent EASD's varsity female field hockey team.  Instead, Respondent EASD hired a White woman

who had not yet graduated from college and had no high school or college coaching experience. Ms. Wilson was a former Respondent EASD Middle School field hockey coach, who had also served as a varsity head coach for a high school for two years, and had been a Division I four-year field hockey player with Temple University.

13.     Ms. Wilson tried repeatedly to get Respondent EASD to investigate and stop race-based bullying of her daughter by a White player and a White head coach on Respondent EASD's field hockey team, to no avail.  The bullying caused Ms. Wilson's daughter to transfer to a different school.  Then, Respondent EASD formally challenged her daughter's ability to play for a different high school.

14.     Another of Ms. Wilson's daughters was forbidden from kneeling during the national anthem for a home field hockey game at Respondent EASD.  Ms. Wilson's daughter was pulled out of the game at halftime and told that nobody was allowed to kneel during the national anthem.  Ms. Wilson asked the administration for support.  To Ms. Wilson's dismay, she did not receive much support from the administration.  Ms. Wilson was forced to have a back and forth Zoom meeting with the Head Coach, Mr. Geiger and the Athletic Director.  The Head Coach was not disciplined in any way.

15.     In November 2020, Ms. Wilson was diagnosed with COVID.  She reported this to her principal, Kyle Geiger, who is White.  Mr. Geiger cross-examined her about how she caught COVID, including asking why she did not tell him where she had traveled.  Mr. Geiger did not cross-examine White teachers about how they caught COVID.

16.     In December 2020, Ms. Wilson was threatened via Zoom Classroom, by a student who impersonated another student in an on-line classroom (the "Threatening Student").

17.     The Threatening Student referred to Ms. Wilson as a "bitch," "whore," called her a "nigger" and said he would "lynch her, burn her and her mom" in front of other students from the class.  The Threatening Student yelled these words before Ms. Wilson was able to remove him from her on-line classroom.

18.     Ms. Wilson sent an immediate e-mail to Respondent EASD's principal, Mr. Geiger, and to the grade-level principal, Jeremy Poliskiewicz, who is White, about the incident.

19.     Ms. Wilson was directed to continue teaching the Threatening Student until he was actually proven to have made the threats.

20.     Ms. Wilson, for obvious reasons, refused to teach the Threatening Student.

21.     Respondent EASD does not make White teachers who were threatened by students continue to teach the students who threaten them and will immediately take the students out of the class and place them in discipline.

22.     This did not happen for the Threatening Student who threatened Ms. Wilson.

23.      In January 2021, the Threatening Student bombed another student's Zoom Classroom and used Ms. Wilson's daughter's name.

24.     In April 2021, the Threatening Student was placed in a classroom right next to Ms. Wilson's classroom, even though at that point he had been charged with two felonies and two misdemeanors related to the threats the student made against Ms. Wilson.

25.     On April 16, 2021, Ms. Wilson sent an e-mail to her principal, Mr. Geiger, because of this.  Mr. Geiger informed her that the Threatening Student would be moved away from her.

26.     Two weeks later, the Threatening Student was still in the classroom right next to Ms. Wilson's classroom.

27.     Despite its knowledge that Ms. Wilson was petrified by the Threatening Student, Respondent EASD did absolutely nothing to put her at ease, or to limit her exposure to the Threatening Student.

28.     As a result of these issues, Ms. Wilson was forced to use her earned sick days.

29.     In mid-May 2021, the Threatening Student was scheduled in a Keystone Exam classroom across the hall from Ms. Wilson's Keystone Exam classroom.  Ms. Wilson had a panic attack with other teachers present.

30.     In September 2021, the Threatening Student brought a BB gun to school that looked like an actual handgun and was at that point finally expelled from school.

31.     In August of 2022, the Superintendent informed Ms. Wilson that the Threatening Student would be returning to Respondent EASD to complete his senior year.

32.     Ms. Wilson requested that Respondent EASD not permit the Threatening Student to return, to no avail.

33.     Respondent EASD did permit the Threatening Student to return to school for his senior year.

34.     The Threatening Student re-enrolled to Defendant in August of 2022.

35.     The return of the Threatening Student placed Ms. Wilson at risk of a violent attack by the Threatening Student.

36.     In August 2022, Mr. Geiger told Ms. Wilson that the Threatening Student was returning and that he would set up a safety plan for her.

37.     An adequate safety plan was not set up for Ms. Wilson.

38.     Mr. Geiger told Ms. Wilson that the Threatening Student was given permission to return by the Superintendent David Piperato and that Mr. Geiger had no say in the decision.

39.     In August 2022, Ms. Wilson spoke with Superintendent Piperato on the first day of school at Defendant's Middle School and asked if he could please reconsider allowing the Threatening Student to return as it caused her great stress and fear for her safety.

40.     Superintendent Piperato told Ms. Wilson that he would discuss the Threatening Student's return with some other administrators and look more into the situation.

41.     On information and belief Superintendent Piperato did not do anything to protect Ms. Wilson from the return of the Threatening Student.

42.     Ms. Wilson's daughter was a senior student at Defendant and would potentially be graduating with the Threatening Student.  Ms. Wilson was uneasy about her daughter and the Threatening Student participating in senior fall activities such as wood collecting, sleepout,  Thanksgiving Day game, and boys basketball games.

43.     Ms. Wilson decided to no longer stay after school for DECA meetings, Bible Study club meetings, or go to any boys or girls basketball games to limit her time in the building where the Threatening Student might be present unattended.

44.     Prior to the incidents with the Threatening Student Ms. Wilson would actively participate in such after-school activities.

45.     In September 2022, the Threatening Student came to Ms. Wilson's teacher planning room while she was on lunch to meet his basketball coach, Eric Jacobs.

46.     Ms. Wilson was assured that the Threatening Student would not be allowed on her floor and the Threatening Student's schedule was adjusted for him to leave the building half day.

47.     While Ms. Wilson was in her teacher planning room, the Threatening Student came to the door to meet with Mr. Jacobs and Ms. Wilson was completely shocked, frozen and had a full-blown panic attack.

48.     Ms. Wilson requested to leave the building for the rest of the day.

49.     Prior to Ms. Wilson leaving the building for the day, Mr. Scott Casterline, one of Defendant's school police officers, came to see Ms. Wilson to verify that the Threatening Student did, in fact, come to her teacher planning room and that other teachers were present, which Ms. Wilson confirmed.

50.     Mr. Casterline confirmed with Ms. Wilson that the Threatening Student did, in fact, violate the safety plan and that he would handle things appropriately.

51.     Mr. Casterline left and said he was going to talk to Mr. Geiger.

52.     Ms. Jeanette Kassis, the Deputy Principal, arrived to cover Ms. Wilson's class and apologized to Ms. Wilson for what she was going through.

53.     Ms. Kassis told Ms. Wilson that she had no idea what she had been going through and that she had just found out that day.

54.     After enduring seeing the Threatening Student in her teacher planning room and having to leave for the day, Ms. Wilson was unable and refused to return to work until an adequate safety plan was in place as she was afraid and did not understand why Defendant would not protect her.

55.     Defendant met with Ms. Wilson at the Administration Building after being out of work for at least 10 days.

56.     Ms. Wilson was informed by Defendant that it would not allow those 10 days to be given to Ms. Wilson and forced Ms. Wilson to take the days from her earned sick days, which depleted all of Ms. Wilson's earned sick days.

57.     Ms. Wilson was informed that she was not allowed to have her support team from her church or the NAACP Easton Branch present at this meeting.

58.     Two representatives from the EAEA/PSEA unions were present but supported Defendant stating that Ms. Wilson should give the Threatening Student a chance to change.

59.     Defendant minimized Ms. Wilson's situation and suggested she should not be fearful of the Threatening Student because "many other teachers are going through worse situations."  Defendant did not specify what the supposedly worse situations because its statement was untrue.

60.     Ms. Cori Fecho, PSEA UniServ Representative,("Ms. Fecho") berated Ms. Wilson for stating that she felt fearful of the Threatening Student and tried to make her think she was being unreasonable but stating that she was.

61.     Ms. Fecho suggested that Ms. Wilson should possibly stop being involved with other school extracurricular activities so that she could put her focus and mental strength only on her current teacher duties.

62.     At the time, Ms. Wilson was a DECA Advisor, Bible Study Club Advisor and CTE Advisor for Defendant's High School.

63.     After her meeting with Administration in October 2022, Ms. Wilson did not have any more sick days and only had three personal days, which forced her to go to work in fear and under much stress.

64.     Ms. Wilson had to increase her anxiety medication and therapy appointments.

65.     Ms. Wilson was forced to return to work as she could not afford to take days without pay and her earned sick days were depleted.

66.     The Threatening Student was still attending Defendant's school with no safety plan in place to protect Ms. Wilson.

67.     The Threatening Student remained at Defendant until January 2023, the second semester.

68.     In February 2023, Ms. Wilson was notified by Threatening Student's Guidance Counselor that he transferred to another school and withdrew from Defendant because he was failing and would not likely graduate from Defendant.

69.     Ms. Wilson continued to teach that school year and applied for another job after the year ended in June 2023.

70.     Ms. Wilson's motivation in the classroom had diminished and she felt that she needed a change in order to get back to the love of teaching and to continue making the impact she had always prided herself on.

71.     Unlike the situation that occurred with the student who threatened Ms. Wilson, when White teachers are threatened, the students who engage in the threatening behavior are immediately expelled from school; White teachers are not reprimanded for being fearful; White teachers are not told to stop going to extra-curricular activities; White teachers' fears are taken seriously; and when a White teacher complains about a threat, adequate safety plans are immediately adopted.

## COUNT I
## DISCRIMINATION ON THE BASIS OF RACE AND COLOR
## UNDER TITLE VII AND PHRA

72.     Ms. Wilson incorporates by reference paragraphs 1 through of 71 of this Complaint as if set forth fully here.

73.     Ms. Wilson is a Black, African American female.

74.     Ms. Wilson was qualified for her position as a teacher as she was hired by Defendant EASD and worked in that capacity for twenty-four (24) years.

75.     Ms. Wilson suffered adverse employment actions when her safety was disregarded, she was forced to use her earned sick days and she was constructively terminated on August 15, 2023.

76.     As a result of Ms. Wilson's race, she received less favorable employment terms than similarly situated White teachers.

77.     Ms. Wilson suffered damages as a result of the adverse employment actions by Defendant EASD.

WHEREFORE, Ms. Wilson requests that judgment be entered in her favor and against Defendant EASD and that she receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

### COUNT II
### HARASSMENT ON THE BASIS OF RACE AND COLOR
### UNDER TITLE VII AND PHRA

78.     Ms. Wilson incorporates by reference paragraphs 1 through of 77 of this Complaint as if set forth fully here.

79.     Defendant EASD is responsible for the actions of its administrators and Board members.

80.     Ms. Wilson was subjected to a hostile work environment rife with racist actions and racist discrimination by Defendant EASD.

81.     The racial harassment was continuous, pervasive, and regular throughout her employment.

82.     Despite multiple race based threats made by the Threatening Student and Ms. Wilson's alerting Defendant EASD of her uneasiness and fear for her safety, Defendant EASD failed to provide adequate support and safety measures to Ms. Wilson.

83.     By failing to implement any policies or safety measures, Defendant EASD continued with its discriminatory conduct as it did nothing to protect Ms. Wilson, an African American Black teacher, from the Threatening Student for over two and half years.

84.     Ms. Wilson suffered this racial harassment because she is African American and Black.

85.     The racial harassment exhibited by Defendant EASD, which created a hostile work environment, affected Ms. Wilson's ability to adequately teach in the classroom.

86.     The racial harassment, which was severe and pervasive, would detrimentally affect a reasonable person in the same position.

WHEREFORE, Ms. Wilson requests that judgment be entered in her favor and against Defendant EASD and that she receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

## COUNT IV
## VIOLATION OF 42 U.S.C. § 1981

87.     Ms. Wilson incorporates by reference paragraphs 1 through 86 of this Complaint as if set forth fully here.

88.     Ms. Wilson, as an African American Black female, was discriminated against by Defendant EASD because of her race and was subjected to a severe and pervasive discriminatory conduct creating a hostile work environment by Defendant EASD.

89.     Defendant EASD's conduct, as previously stated, violates Ms. Wilson's federal civil rights as guaranteed in 42 U.S.C. § 1981, which prohibits such conduct.

90.     Ms. Wilson suffered damages as a result of Defendant EASD's intentional discriminatory conduct.

WHEREFORE, Ms. Wilson requests that judgment be entered in her favor and against Defendant EASD and that she receive an award of back pay, front pay, punitive damages, compensatory damages, attorney fees, and any other relief this Honorable Court deems proper.

### JURY TRIAL DEMAND

91.    Ms. Wilson demands a trial by jury on all claims and issues so triable.

**BROUGHAL & DeVITO, L.L.P.**

Dated:    06/07/2024          By:        /s/ John S. Harrison, Esquire

**JOHN S. HARRISON, ESQUIRE**
Attorney I.D. No. 53864
**ERIKA A. FARKAS, ESQUIRE**
Attorney I.D. No. 313686
38 West Market Street
Bethlehem, PA 18018
Telephone No.:  (610) 865-3664
Facsimile No.:  (610) 865-0969
*Attorneys for Plaintiff*